I have my cell phone open on the desk with me because a person very close to me may be expecting a family member to pass away at any moment and I would like to be aware of that if it happens. So you'll please excuse me if I get a spam call or something other than that notice. I welcome you here today. We have our traffic light system. We understand that the respondents here have had their troubles about getting to oral argument and we deeply appreciate Mr. Kaluta being able to step in at the last moment for his very first Fifth Circuit argument and I'm sure Mr. Leatherberry will go easy on him. We have our traffic lights. Yellow light means you have two minutes. Red light means please conclude your argument. We are familiar with the briefs and record excerpts. We have not necessarily been into the entire record before we address the arguments and we appreciate record citations. With that we call the first case, number 21-10776, Banco Pueyo v. Lone Star Fund Roman numeral IX and we hear first from Mr. Leatherberry. Good morning, Your Honors, and may it please the Court. We were called the respondents below so I may use respondents to refer to our parties who were responding to the subpoena or I'll use appellants if that's better for the Court. The District Court erred in three ways in applying . . . Wait a minute. Is the PA system on? I can hear you but I don't think you're amplified. Is your volume on? Yeah. We'll just go on. All right, Your Honor. I can hear you now. Sir? I can hear you now. Okay. Thank you very much. I appreciate it. The District Court erred in three ways in applying the federal statute at issue in the U.S.C. Section 1782. First and most importantly, the Court failed to reconsider its ex parte order granting petitioners' application for subpoenas when it had a full record including the appellant's arguments in opposition to the application. In deciding the subpoena should issue under 1782, the Court only considered the petitioner's or the appellee's evidence and arguments on both the statutory and the intel discretionary factors. The Court's failure to give respondents notice and opportunity to be heard on the 1782 issues was error and abuse of discretion. It's such a fundamental underlying error in the case that that's subject to the Court's questions where I intend to spend most of my time today. The non-responsiveness just kind of jumps out. So this was before the magistrate judge a couple of times and then the district judge and so forth. So I assume when there was no opportunity to respond, was there a conversation with the District Court or . . . What happened, Your Honor, is the application for subpoenas and all the supporting documents that they filed in support of the application were filed ex parte and under seal. So the appellants had no notice, no knowledge. And the first notice that appellants got of the application for subpoenas when the Court's ex parte order was issued on January 14th, after the ex parte order was issued, the District Court might have arguments against the issuance of the subpoenas as well as under Rule 45 as to the scope of the subpoenas. But when the appellants filed all of our evidence and our arguments, the District Court expressly refused to consider our arguments under Section 1782 and said the only analysis that was going to take place going forward was under Rule 45. And of course, as the Court knows, and it's in our tab B in the bench book, the tests under 1782 and the tests under Rule 45 are very different. The Court so held in Texas Keystone at page 556. It's a different analysis. The only overlap is in the fourth factor, the undue burden factor. And so that is a very fundamental error, Your Honor, in terms of limiting the threshold decision of whether or not to issue the subpoenas at all, whether or not to give appellees the opportunity to use the federal courts to get this discovery to use in the Portuguese proceedings. It was a lopsided determination. It was an ex parte determination, and the Court expressly channeled the arguments from there forward only under Rule 45. Aren't there some other cases where courts have evaluated intel factors under Rule 45? Your Honor, certainly the overlap of the undue burden factor under the fourth intel factor under 1782 and the undue burden factor under Rule 45 overlap to a certain extent. But the other three factors are very different. You know, under 1782, the test is— I didn't ask that. I asked you whether courts have used Rule 45 to look at the Rule 1782 factors. Not that I recall, Your Honor. OK, that was— Not that I recall. I'm sorry I misunderstood your question. Mr. Leatherberry, I just want to understand sort of the structure of your argument. I mean, there's part of your argument—I think it's downstream of what we're arguing about now—that the district court abused its discretion in applying the discretionary factors and maybe made legal error in the statutory factors. So those are issues. What we're talking about now seems to me to be different. I just want to understand if I'm understanding it. You're saying there's a threshold error in not sort of—and I'm not trying to put words in your mouth—after the ex parte proceedings, after the ex parte subpoena is issued under 1782, the district court, in your view, committed legal error by not sort of restarting the process and saying, OK, now you're here in court. Now we're going to consider 1782 afresh. Is that right? Correct, Your Honor. OK, so I think I understand that. What's your best case that a district court makes legal error by not doing that? I understand there are cases where district courts may choose to do that, but where's a case that says the district court doesn't do that, then, yeah, then it commits legal error? Your Honor, I have not been able to find that case, but I sure can find a case that says district courts can ignore 1782 factors again, you know, when they are raised on a motion for reconsideration or, you know, in response to an ex parte subpoena. I get that. I get that. I guess my concerns are two. I mean, we can review the 1782 factors under abuse of discretion. Correct. The discretionary factors under Intel. The other one is my understanding from looking at a lot of these district court cases is that ex parte proceedings are fairly common at sort of the outset. And so if it's true that a district court must sort of restart the 1782 analysis, why would a district court ever do an ex parte issuance of a subpoena? It would always be subject to questioning again. I agree with you, Your Honor. I don't think that district court ever should do an ex parte under seal analysis. There's no lawsuit pending. This is, this 1782 proceeding is completely like, unlike discovery in a lawsuit pending in federal court. The idea that it, the fact that other district courts may have considered it ex parte doesn't also mean that they are not willing to reconsider whether they abuse discretion legally or factually in granting, in applying these factors. Appellants completely agree with the court, Your Honor. I think, and certainly that's, that's one of the arguments that appellees make, which is this, you know, subpoenas issue all the time in ordinary lawsuits. But this court's opinion in Texas Keystone, for one, shows that the 1782 screen, the judicial test to determine whether or not parties get to use the federal courts to obtain discovery for use in foreign proceedings is a different test. And it shouldn't be just a rubber, it shouldn't be an ex parte determination. It shouldn't be just a, just a check the box. Well, I want to make sure you're not under, well, however you understand the thrust of my question, I guess, is immaterial. But I want to understand your argument. Are you, are your argument that under 1782, a party seeking discovery cannot proceed ex parte? That has not been the practice, Your Honor. And so, well, if it's, so if a district court does it, Right. Issue the subpoena on an ex parte basis, then you can come in and make a Rule 45 motion quash. Your, is your argument that that is legal error? Yes. If the, if the motion for reconsideration is limited to the Rule 45 factors, I think it is legal error. And, you know, I think that the respondent should have an opportunity to make its arguments under 1782 because it is a, it's a different test entirely. And in terms of, in terms of the, in terms of the ex parte nature of the order, I think what you see in the In re Microsoft case is, is from the Northern District of California, Judge Duncan, is a case that lays out this reconsideration process and why courts should and we submit must reconsider 1782 decision if 1782 arguments are raised that weren't able to be presented when the ex parte subpoena was issued. I mean, for instance, something that's relevant to 1782 is, is the position of the requesting parties here vis-a-vis the various proceedings, because some of them are parties to one proceeding. One of them is party to another. Others are not party to anything. And yet the court indiscriminately said this discovery is available to everybody. Everybody gets everything. And as far as I'm aware, these, you know, Blackrock and, you know, all of these entities are not within the fold of Blackrock. Right. That's correct, Your Honor. Particularly, that's true of Blackrock, Carlson Capital, and CQS. They are alleged, based on one or two sentences, very conclusory sentences, to be agents or affiliates of agents to parties in foreign proceedings. And the question of whether or not that meets the interested person statutory factor under 1782 that's before the court is, is a question that, that the court, you know, may reach if it, if it gets past the ex parte and failure to reconsider. I guess that's part of my confusion is, forget the ex parte issue. Yes, sir. We can review whether parties are interested under the statute in this appeal, can't we? Aren't you asking us to? Right. Yes, Your Honor. I mean, the court, the court certainly can engage in statutory construction based on the full record and determine whether or not all of the affiliates are interested persons in a foreign proceeding under the third statutory factor. Well, I mean, what are we talking about, 13 of them? Is that, is that how many? There are currently 11 still, Your Honor. And three are parties to no proceedings. They are alleged to be agents or affiliates of agents of parties to foreign proceedings. And only one of the appellees is a party to the acquisition annulment actions. And, and that's, if the court looks at tab D of our bench book, which is the summary that appellees put in of the discovery requests of appellants, you'll, the court will see that the vast majority of, of the requests are about the acquisition annulment action. And only one of the 11 is party to the acquisition annulment action. I know, but isn't it settled law that to be interested, you don't have to be a party? No, that's, that's correct, Your Honor. And, and certainly other courts have held that parties with, non-parties, but persons, corporations, affiliates that have significant procedural rights are interested persons under section 1782. Yeah, but what is an agent? That's exactly our point, Your Honor. That's exactly our point. And is there evidence in the record that explains the scope of agency here? No, Your Honor, there's not. And I'll give the court the sites, the best sites that I believe appellees have for that agency question. And, and for Blackrock, that's in the record in an affidavit at 241, 242. For Carlson, that's in the record at 253, 254. And for CQS, that's in the record at 569, 570. The court will see that they're the same three sentences for, for all of those, those companies and that they are, they're conclusory at best. They say, we're an agent or an affiliative agent of somebody who's over in those proceedings and we can control or pass on evidence to those parties to present in the Portuguese proceedings. And that's it. And so that is a statutory interpretation question for this court if it gets there. Now, in terms of the discretionary factors, Your Honor, I think the disposition may be a little bit more complex. I mean, certainly the court, since, since the district court did not review the discretionary factors except on an ex parte basis. It expressly declined to review the discretionary factors after appellants had filed their evidence and made their arguments. This court doesn't have the benefit of the district court's analysis of the application of the four intel discretionary factors. Particularly the first and the third are important here because they involve whether or not the discovery slot is within the jurisdictional reach of the Portuguese courts. Well, is that how the Supreme Court described that factor in intel? You know, it is if you read intel fully, Your Honor, because, well, but in intel, Microsoft was a party. And so it made sense, or a participant. It made sense to have the shorthand participant versus non-participant. I understand completely the court's question. And, and I think the court understands our arguments. But, but that's, that's the point is the broader test makes more sense than the checklist participant versus non-participant. Let me ask you a question before you leave. Yes, Your Honor. Are you seeking primarily a remand to the district court to apply the 1782 factors in the first instance, or a plenary ruling, you know, in your favor on the 1782 factors? Your Honor, I think there are, if, if, as the court wrote in the Sand Send opinion, which was also involving an ex parte decision about a subpoena by the Federal Home Loan Bank Board, if the record dictates only one outcome, then the court can reverse and render. And I think that's particularly true if the court is persuaded by our statutory factor argument, because that's a question of law and a question of, of, of statutory construction. If there's more than one possible outcome, particularly with the application of the discretionary factors, the court doesn't have the district court's analysis or the benefit of the district court's analysis on the full record. It just has its ex parte analysis. So the court certainly could and, and, and probably should remand to the district court for its assessment of the discretionary factors under Intel based on the whole record. Would you please summarize very briefly what, which discretionary factors weigh in your, you, you believe weigh in your client's favor? Yes, Your Honor. In argument, I was going to focus particularly on the first and the third factors under Intel. The first factor Judge Duncan and I were just talking about in terms of is that a participant versus non-participant test? Yes, Your Honor. And the third factor, very closely related to the first and maybe a little broader, is whether or not the discovery requests in the U.S. are circumvention of Portuguese discovery rulings. And, you know, there, there is evidence even in the Apple East filings that they've dissat, they've been dissatisfied with the Portuguese courts. The second factor of receptivity, we've briefed for the court and, and certainly rely on that briefing and the undue burden. We briefed quite a bit under Rule 45 and, and, and also under 1782. I think we've discussed that quite a bit in our briefs as well. Okay. Thank you. Thank you very much, Your Honor. All right. Mr. Kaluta. Good morning, Your Honors. May it please the Court, I'm Michael Kaluta of Quinn Emanuel on behalf of Petitioners at the Lease. Your Honors, as you're thinking about this appeal, I think it's important to consider the district court's treatment of the statutory and the discretionary factors separately. Because the district court's treatment of those factors and the implications of those factors and the implications of that treatment are very different. As to the statutory factors, it's simply not true that, that the district court rested just on ex parte findings. The magistrate judge did give full adversarial consideration to respondents' arguments and the district court later relied on that and cited it with, with, with approval. But regardless of any error in considering the statutory factors, Your Honor, that error is harmless. Respondents admit that for at least 8 of the 11 petitioners, they satisfy at least, they satisfy all the statutory factors for at least some of the discovery sought. Turning to the intel discretionary factors, Your Honor, it is true that the district court rested on its ex parte findings for 3 of the 4 factors, but that is not error. As the respondents could not, there is no case holding that the, that the district court must give full adversarial reconsideration. Well, tell me another kind of statute where a party can haul into court and seek ex parte relief and then it's not reconsidered when the other party is given notice and an opportunity to appear. Sure, Your Honor. And for that, I'm sorry. Go ahead. Sure, Your Honor. I think it's important to understand that the baseline rule for the issuance of subpoenas is ex parte proceedings. And so when Congress wrote this statute, it does not mention adversarial proceedings at all. All it says is that there's an application to the court for discovery. If Congress wanted to deviate from the usual way to issue subpoenas, it could have put in the statute and, and given the respondents the adversarial rights and all the bells and whistles that come with it. I think that's a pretty big stretch. Congress doesn't lightly do away with notice and an opportunity to be heard. Well, again, Your Honor, I think the baseline is that subpoenas are always issued ex parte. But they're always issued in the context of a case where the, except perhaps for a grand jury, is this like a grand jury proceeding? No, Your Honor. This is a simple request for discovery. Again, I think it's important to understand that. Yeah, but every other simple request for discovery in our system is, is appended to a dispute in which the defendants have been notified and served and so on. Well, Your Honor, that's, for third party discovery, it is not true that the defendant has noticed before the third party subpoena is served. No, but they know precisely. All right. Are you, you're not conceding, are you, that the other side in this dispute had, an opportunity to respond? They were able to respond. They were able to move to quash it under the federal rules of civil procedure. And the statute specifically says the rules of civil procedure shall apply. Yes, Your Honor, that's exactly right. The due process rights of the respondent are fully protected by Rule 45. It is very common for subpoenas under 1782 to be issued ex parte as it was done in Texas Keystone. And this court said at Texas Keystone, after a grant of an ex parte 1782 application, that the federal rules were governed. Rule 45 fully protects respondents due process rights. The Second Circuit has held that and so has, so has this court at Texas Keystone. Well, where does Rule 45 say that the question of interested party can be considered? Your Honor, on the interested party factor, I think the whole ex parte problem is really not relevant because this court can consider the ex, the statutory factors. The arguments were fully briefed before the, before the argument. But we don't normally, you know, the old saw is this is a court of review, not a court of first review. And interested party, at least as some of these people like Blackrock, turns on the scope of agency, does it not? Your Honor, it's true that this court is a court of review and not review, but it's also true this court can affirm on any basis supported by the record and raised below, which the interested person factors all were. As to Blackrock and the other two non, non, the parties who are not actual parties to the Portuguese proceedings, it's undisputed that they control the evidence that the parties to the Portuguese proceedings can place into evidence. Blackrock— I don't see where that was undisputed. Your Honor, it's in the affidavits that we provided and respondents have not contested that the parties here have the ability to control the evidence that the funds put into the record in the Portuguese proceedings. They are simply investment funds. Does that make them an interested party? Absolutely, Your Honor. Under Intel, it is clear that the interested person factor does not need to be actual parties to the, to the foreign proceeding. Well, are they a party at all? I guess is the point. No, Your Honor, again, that's not what the interested person factor is looking at. It expands much broader than that. And the Supreme Court was clear in Intel that it expands to anyone who has a reasonable interest in obtaining assistance for that foreign proceeding. And here, Blackrock, Your Honor, and the other two non-party petitioners, again, have the full ability to control the evidence that can be put before the foreign tribunals. They direct and control the funds. That is more than enough to give them an interest in the foreign proceedings. And again, it's worth noting, Your Honor, that Blackrock didn't, that the four, Blackrock represents over, is filing the application on behalf of over 14 funds. The reason that Blackrock filed, filed the application itself and not the 14 funds was not some nefarious reason. It was simply out of convenience. Instead of having 14 new petitioners with 14 new affidavits in, Blackrock, as the manager of all those funds, step in and is pursuing the application on their behalf. And, Your Honor, respondents also make the point that some of the petitioners, so eight petitioners are parties to the re-transfer action. One petitioner is also a party to the acquisition action. Respondents make the point that the re-transfer action petitioners should not be able to seek discovery related to the acquisition. Your Honor, that presupposes that the acquisition and the re-transfer are separate events when they were actually very interconnected. As the timeline that respondents provided you shows, Novobanco was put up for sale, they didn't get good offers, then the re-transfer happened, the bonds, bad bonds were taken out, it was put back up for sale, and at that point respondents made the winning bid and closed on the acquisition. There's no question that the due diligence materials of the acquisition would reveal information relevant to the re-transfer. They're interrelated and so all of the respondents, or all the petitioners, should be allowed to seek discovery as to all of the requests. What's the current status of the Portuguese proceedings? Your Honor, as far as I understand, the Portuguese proceedings have not advanced really at all. And so what will your discovery do in regard to those proceedings? As far as how will we, well, we will use the discovery we get here once we know what it is to advance the claims that we are pursuing in the Portuguese proceedings seeking to nullify the acquisition and the re-transfer action. Well, why isn't this circumventing those proceedings? Because aren't your lawyers doing anything in Portugal? Your Honor, so I think if you turn into the third factor under intel, we are not circumventing the Portuguese tribunal's jurisdiction. Again, the respondents here are not parties to the Portuguese proceedings. Any ruling for discovery here— I understand that, but I ask you a question. Are your lawyers doing anything in the Portuguese proceedings? Yes, Your Honor. They are pursuing the litigation, but the holdup is not because of the lawyers, just simply the pace of the courts in Portugal. And the fact, Your Honor, that we have pending discovery requests in Portugal, as this court held in Ecuadorian plaintiffs, is not reason to deny the application here. How long have your discovery requests been pending in Portugal? Your Honor, as far as I'm aware, close to two and a half years. That's as far as the record goes and as far as I as an appellate counsel know. About the same length of time as this litigation. Yes, Your Honor, that's correct. But again, it is true that this court made clear in Ecuadorian plaintiffs that just because they're pending discovery requests in the foreign proceedings, there's no reason to deny discovery here. That is not what 1782 was intended to do. That's not what the text of 1782 requires. Well, at some point, when should a party that becomes the subject of the 1782 request be able to go into court and argue that the intel factors do not justify—I mean, even in intel itself, the issue was fully litigated at the district court to the Ninth Circuit and before the Supreme Court took it up and remanded it with instructions for the district court to consider the factors, right? Yes, Your Honor, but I do want to clarify that the Supreme Court made the intel factors. They said district courts may consider them. Some other courts have called them guideposts. This court has called them your suggestions. But my point—well, I guess I'm going back to the due process argument. Intel is a paradigm, in my view, of how this procedure should work. And we're arguing—you're arguing circumvention up here, but circumvention has really not been vetted in the district court, has it? Well, Your Honor, the district court did make findings on circumvention. Those findings were ex parte. Yes, that is true. Yeah, well, it was about one sentence. Yes, Your Honor, but again, there was no circumvention of the foreign proceedings here. And again, I think it's important— But now we have—don't we have an affidavit from some lawyers or something like that? I'm sorry, Your Honor? Do we not—have they not presented some evidence about circumvention at this point? Are you referring to the evidence of the depositions not being admissible into the Portuguese proceedings? Yeah, whatever, yes. Your Honor, I think it's important to remember that 1782 and the Intel factors were never designed to pull district courts into the nitty-gritty of foreign discovery, of whether or not the evidence is admissible under foreign discovery law. That is not what 1782 is meant to do. It was meant to be a simple, straightforward process that the courts come in, that the respondents have the right under Rule 45 to raise the arguments under Rule 45 to protect their due process rights. And again, the respondents have admitted that the undue burden factor is the same for Intel and for Rule 45. And the undue burden factor is a flexible balancing test that can take into account many of the Intel arguments, as was the case here. A big point that the respondents made throughout the district court proceedings is that petitioners should not get discovery from the foreign affiliates of respondents. The district court accepted that argument on Rule 45, and now we are not challenging that ruling. So they actually won on that point that we cannot get discovery from the foreign affiliates. That is an argument they raised under Intel, and it's also an argument they raised under Rule 45, again, showing that all of the due process rights are protected. Circling back, Your Honor, to the statutory factors very quickly, I want to make it a that the acquisition action and the retransfer action are entirely separate. The remedy is to have the district court go back and say which petitioners should get discovery for which request. The remedy is not, as respondents would have, to deny the application outright. I think they made the argument that you waived that possibility. Your Honor, the district court proceedings is still ongoing. We have not—the discovery has not even—there's been no discovery that has been had yet. There's still plenty of time for the district court to craft an order of this magnitude. This is not a normal appeal in the sense that the proceedings below are truly final and finished. They're still ongoing proceedings. So the claims of waiver are not proper here. But you don't disagree that we have appellate jurisdiction there, right? No, Your Honor. I do not disagree that we have appellate jurisdiction here, that you have appellate jurisdiction here. The remedy that respondents are asking for for the statutory factors would be unworkable and be a waste of judicial resources to make the petitioners file 11 separate applications going forward seeking the same discovery when all of this is already before the district court. You can remedy this problem with a simple discovery order. Again, it's undisputed, Your Honor, that eight of the 11 petitioners meet the statutory factors for at least some of the discovery sought. Turning to the intel discretionary factors, Your Honor, the first intel factor, as Judge Duncan noted, focuses on the participant, non-participant status. Here, it is clear that the respondents are non-participants to the foreign proceedings. That should be the end of the analysis for the first factor, which clearly favors petitioners in this case. And, Your Honor, in the previous appeal in this case, this court did also describe the first factor as the participant, non-participant status, not an analysis over whether some of the documents may also be available from the Portuguese parties in the foreign proceeding. In terms of the second factor, Your Honor, the second factor requires authoritative proof that the Portuguese courts would not be receptive to the assistance that's being offered here. Again, the primary proof that they have offered is the Article 23 reservation, but that reservation, Your Honor, says nothing whatsoever about the type of discovery that Portugal will accept from the U.S. It speaks only about the type of discovery that it will not allow in its border. And that's the only piece of evidence that they point to, and that is simply not the type of authoritative proof that definitively states that Portugal will not be receptive to the assistance that the U.S. courts grant.  Your Honor, I just want to briefly hit again that there is no circumvention. The respondents of the petitioners are not trying to circumvent the Portuguese court's jurisdiction. The respondents here are not subject to that jurisdiction. Any discovery sought here will not circumvent any discovery sought there, and the fact that there are overlapping requests is not reason to deny the idea of a court. Are you seeking, on that point, circumvention, are you seeking discovery here in this proceeding that Portuguese courts have expressly refused to authorize? No, Your Honor, we are not. The discovery that is being sought here is documents within the possession of the respondents, not held by their foreign affiliates. The Portuguese courts have not spoken one way or the other about that discovery being sought here. And, Your Honor, on the undue burden factor, the fourth factor under Intel, again, it is not true for that factor that we are only talking about ex parte findings. The district court did fully consider the undue burden analysis under Rule 45, and, to be quite honest, the respondents were very successful under Rule 45 in putting forward their undue burden arguments. The points they make here, Your Honor, are points that the district court considered. There is no person— Sir, what do you mean by that they were successful? Oh, Your Honor, so on the Rule 45 motion to quash, the district court did significantly narrow the discovery that we could seek in this application, and so, in that sense, they were successful under the Rule 45 challenge. Let me ask you, so what you're doing is you're trying to get evidence from third parties to a transaction that you were challenging, right? Yes, Your Honor. And if you were challenging that transaction in the U.S. court, these are not the accountants. They are not the lawyers in the transaction. They are not the financial advisors in the transaction. They are other people who invested, apparently. Would you be able to get that kind of discovery under the federal rules if this were a U.S. proceeding? Sure, Your Honor. We were challenging the close of an acquisition here in the United States, and the third party was—we wanted— Do you think the third party has some kind of hearsay documentation that you could get directly from the defendants? Because, obviously, you're talking about prospectuses and evaluations and things like that. Your Honor, the respondents here advised on the close, conducted their own due diligence on the close. So what we're seeking are the documents that they made and reviewed during that due diligence process. Yes, there may be some overlap as to the documents that could also be had from the parties. But their state of mind, which is what you're looking at, has nothing to do with the legality of the—whether there was fraud or whatever in the transfer or retransfers, does it? I'm not sure—can you— You're saying, what were they thinking about? What did they know in deciding to invest in the retransfer? Well, it's more, Your Honor, we were simply trying to understand more about the retransfer and the acquisition. We're trying to understand why our bonds were transferred out of Novobanco into the Insolvent Bank. Because life is hard and business is mean. Perhaps, but, Your Honor, we also have reason to believe that there are less benign reasons for the retransfer of our notes out of Novobanco into the Insolvent Bank. But I think we're getting away from the question before the Court here, which is 1782 does not really delve into this relevance type of standard. It's a very minimal requirement. All we need to prove is that we are seeking documents that will be for use in a foreign proceeding. Well, yeah, and what does use mean? Well, Your Honor, I want to point out that the respondents have not raised any argument over the for-use problem. Well, you said we can consider matters of law, so the question of use may be relevant. Of course you can, Your Honor, but usually you consider questions of law that are also raised below. There is no challenge to the for-use prong in the Court below. But the for-use prong focuses on a very broad, relevant standard. It's the same standard used under the federal rules. It's very broad, very de minimis. And here, Your Honor, we think we easily meet that standard for the discovery that we are seeking from the respondents for use in the Portuguese proceedings. Your Honor, I see my time is at an end unless there are any further questions. Well, we gave Mr. Leatherbury a minute or two extra, so if there's anything you feel you've left out, feel free. Absolutely, Your Honor. Well, I would like to ask, I asked Mr. Leatherbury about how common it is for a 1782 subpoena to be sought ex parte. And I think, I mean, he can respond on rebuttal. I think the argument is, is that if it is sought ex parte and granted, and then challenged by the respondent, and the Court does not reconsider the 1782 factors, and that's a legal error, I think that's the argument. Maybe you under, I don't, can you comment on that? I mean, it's, how, first of all, what, is this done ex parte fairly common, common? Sure, Your Honor. Yes, it is extremely common for these applications to be granted ex parte. Again, because this was intended to be a simple, straightforward statute. And it is also common, Your Honor, for the respondent to sometimes raise arguments on reconsideration about the intel and discretionary factors. And courts can choose to reconsider those factors if they so wish, if they think it is helpful. We are not saying that the District Court is not able to consider on reconsideration the statutory or the discretionary factors. We are just saying it's within their discretion to do so, especially on the discretionary factors, Your Honor. Again, these are just guideposts that are meant to guide the District Court's decision. It's the District Court that is in the best position to determine whether or not it needs the additional briefing, or whether or not it's going to change the analysis under the intel. Well, when I never even heard the opposition, it's pretty, pretty bold to say, by the way, I don't, I mean, isn't that precisely why we reversed the District Court in Keystone? Well, no, Your Honor, for Keystone, you reversed the District Court on a motion to quash. And on the motion to quash, it's absolutely true that the respondent needed a chance to reply. That is where the due process rights are protected. Here, we are not talking about the motion. But that went to the 1782 also, I thought. No, no, Your Honor. The motion to quash was in Texas Keystone, unless I'm forgetting, did not, that opinion did not talk about the intel or discretionary factors. It simply remanded because the District Court did not make findings on the motion to quash the arguments that were made there. Well, we don't know what was said. I mean, all right, whatever. Again, Your Honor, the preliminary 1782 threshold consideration is separate from the Rule 45 analysis. Rule 45 is where the bulk of the adversarial proceeding is meant to occur. 1782 was meant to be simple, straightforward. It was meant to give, and it was simply an application. What's your best citation that it's simple and straightforward when Justice Ginsburg spends several pages knocking out various preliminary arguments, noting there's a conflict in the circuits, and then saying, and here are the considerations? Yes, Your Honor. That's a lot more complex than the ordinary Rule 45. Well, Your Honor, with respect, the Rule 45, the 1782 statutory factors are, is the target within the District? Are they? Well, just tell me a case that says it's simple and straightforward. Your Honor, I think this Court in Texas-Keystone and in Ecuadorian plaintiffs, and maybe one other, has stated that the twin aims of the statute were meant to be efficient assistance to litigants, to be a model to emulate so other countries will give us the same type of assistance back. The statute is meant to be efficient, simple, and without, it was never meant to overburden district courts and conscript them into becoming experts in foreign discovery law. That was a Pandora's box that 1782 was never meant to open. And with that, Your Honor, for these reasons, we respectfully ask that this Court affirm the District Court. All right, sir. Thank you. Mr. Waterbury. May it please the Court. Efficiency and simplicity were never designed to eliminate due process and the opportunity to respond and notice. And if I understand Apolli's argument correctly, if a petitioner does not file ex parte and gives notice to the respondent who is being asked to produce documents in the U.S., then Rule 1782 factors statutory and discretionary apply. If they choose to go ex parte, then only Rule 45 applies. And it makes no sense to have two different standards for, you know, depend on the secrecy of the court and how the petitioner, or Apolli in this case, tries to go about getting the discovery. The real world consequences of affirming the District Court's ex parte order and its and far-reaching. There would be no check on other parties who wanted to misuse 1782 and file ex parte and under seal and foreclose any attempt by the respondents to make their arguments under the statutory and discretionary factors of 1782. They would be channeled only under Rule 45. As we've discussed, the tests are very different. Another fundamental— In Texas Keystone, the court considered the 1782 objections under Rule 45 because that's the way the parties framed the case. So here, let's say arguably the other side frames it as a Rule 45. I mean, should the driving force be how the parties frame the case before the District Court or a function of either or, both, or if the other side raises it, the District Court is duty-bound, you know, to do both. You follow what I'm saying? Yes, sir. Yes, Your Honor. I think it's the latter. I think, of course, in Texas Keystone, it was the petitioner, the party requesting discovery that was the appellant because the respondent's motion to quash had been granted without opportunity to respond to it. I think if the respondent, the appellants here, raised the 1782 factors in addition to the Rule 45 factors, I think the court should consider those because that's the only opportunity that the appellants have to raise those factors, and 1782 has to mean something. I mean, let me give the court another couple of examples of the unfairness in the District Court's ex parte order. Again, remember the materials were under seal. We had no notice of them, and this was all done only on the appellee's evidence. The District Court did make findings under the discretionary factors and appeared to place the burden on the respondents who didn't even know about the proceedings yet to disprove the discretionary factors. The court at page 5812 of the record—I believe it's 5812—wrote in these two sentences that Judge Jones referred to that no evidence suggests that Portuguese courts would not be receptive to this evidence, and nothing suggests that it's a circumvention of the Portuguese proof-gathering restrictions. We hadn't had a chance to make our arguments yet, and it would be really unusual for a petitioner to go in and say, oh yeah, the Portuguese courts really don't want this evidence, and we're just dissatisfied with what's going on over there, so that's why we're coming to you, U.S. Federal Court. So it's completely unfair that the District Court refused to reconsider those discretionary factors in light of the conflicting evidence about the first and third intel discretionary factors. And you got some relief under your Rule 45. Correct, Your Honor. And you got more relief under Rule 45. Would you be making the 1782 arguments, or you'd be happy with the relief you got? Well, I think—I mean, certainly, Your Honor, the court could have quashed the subpoenas under Rule 45, but that points up another difference between the 1782 test and the Rule 45 test, because the Rule 45 preference under WEWA and the other cases is to modify the subpoenas, as the District Court did here. 1782, it's a question of whether or not the subpoenas issue at all, and whether or not the requesting party gets to use the federal courts to get this discovery to take overseas and use in foreign proceedings. I see my time's up, Your Honors. If the court has any more questions, I'd be happy to answer them, but we very much appreciate your time today. Thank you, sir. The court will take this case under advisement. Mr. Kaluta, you did a great job.